IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JASON MICHAEL CLARK, ex rel Conservator RICHARD GARY CLARK,<br><br>*Plaintiff,*<br><br>JONATHAN KERLEY<br><br>*Defendant.* | Case No.<br><br>JURY DEMANDED |

## COMPLAINT

Comes now the Plaintiff, JASON CLARK, ex rel Conservator Richard Gary Clark, by undersigned counsel and for his complaint against the Defendant Jonathan Kerley states the following:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by federal statutes and the Constitution of the United States of America.

2. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

3. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

4. Plaintiff further asserts claims for relief under 42 U.S.C. § 12132, which prohibits discrimination on the basis of disability by public entities and 42 U.S.C. § 12133 which provides the private right of enforcement to plaintiffs suffering discrimination on the basis of disability.

## Parties

5. Plaintiff Jason Clark is an adult resident of Fentress County, Tennessee.

6. Defendant Jonathan Kerley is a doctor who resides in Hamilton County, Tennessee. Defendant Kerley is the CEO of Fast Access Healthcare, PLLC ("FAH") and is the physician ultimately responsible for the oversight of Physician's Assistane Anthony Baird and Nurse Nerissa Owens.

## Factual Allegations

7. Jason Clark suffers from a seizure disorder that produces grand mal seizures.

8. Jason Clark is prescribed levetiracetam to manage this condition and his seizures.

9. Jason Clark has a history of alprazolam dependence and withdrawal.

10. Withdrawal from benzodiazepines such as alprazolam can cause seizures.

11. The Fentress County Jail routinely incarcerates individuals suffering from benzodiazepine withdrawal.

12. Fast Access Healthcare, PLLC ("FAH") is the third-party medical provider for the Fentress County Sheriff's Department.

13. Jason Clark was booked into the Fentress County Jail on September 1, 2015.

14. On September 1, 2015, Jason Clark's inmate medical intake form indicates:

| Yes | Does the imate report to be on any medications that should be available? oxycodone, xanax. He will withdrawal | 11 |
|---|---|---|

15. On February 16, 2016, Jason Clark was booked into the Fentress County Jail.

16. On February 16, 2016, Jason Clark's inmate medical intake form indicates:

| Yes | Has the inmate fainted recedntly or had a recent head injury had seizure in december | 21 |
|---|---|---|

17. On May 26, 2017, Jason Clark was booked into the Fentress County Jail.

18. On May 26, 2017, Jason Clark's inmate medical intake form indicates:

| Yes | Does the imate report to be on any medications that should be available? seizure keppra | 11 |
|---|---|---|

19. On March 21, 2023, Jason Clark was arrested and booked into the Fentress County Jail on a misdemeanor charges of DUI 2nd, Simple Possession of Schedule II, Simple Possession, Possession of Drug Paraphernalia, and Driving on Suspended License.

20. Incident to his arrest, Fentress County Sheriff's Deputies found Jason

3

Case 2:24-cv-00023   Document 1   Filed 04/01/24   Page 3 of 18 PageID #: 3

Clark in an intoxicated state and in possession of alprazolam.

21. On March 21, 2023 As part of the booking process, Jason was screened by the Fentress County Jail medical staff including nurse Nerissa Owens and P.A. Anthony Baird.

22. On March 21, 2023 Jason Clark completed an intake medical form as part of the screening by the Fentress County Jail's medical staff where he disclosed the following:

| | | | |
|---|---|---|---|
| Y | Are there any medications that you have been prescribed in the last 90 days that we need to make available to you? **KEPRA** | | 11 |
| N | Have you ever received treatment for mental illness? | | 11 |
| Y | Is the inmate on medication for diabetes, heart disease, or seizures? **KEPRA** | | 12 |

23. The March 21, 2023 intake medical form indicates that Jason Clark has a history of seizures and has been prescribed Keppra (the brand name version of levetiracetam) to manage this condition.

24. Based on Jason Clark's seizure disorder, history of alprazolam withdrawal, and with his possession of alprazolam, he was at high risk for seizures at the time he was booked into the Fentress County Jail on March 21, 2023.

25. On March 21, 2023, P.A. Anthony Baird, an employee of FAH under the direct supervision of Defendant Kerley, made an entry into Jason Clark's inmate medical record:

> | Date of Physician's Order | Details: |
> |---|---|
> | 3/21/23 | Levetiracetam 750mg ṏ BID (per Rx bottle MIT Dr. Clark Filled 2-21-22) Bottom Bunk |

26. As indicated in this notation, on March 21, 2023, Dr. Richard Gary Clark, a licensed physician, and the father of the plaintiff, delivered Jason Clark's prescription levetiracetam to the jail staff.[1]

27. Dr. Richard Clark explained that the medication was for Jason Clark's seizure disorder and that it was necessary to administer the medication as prescribed in order to mitigate the risk of Jason Clark experiencing seizures.

28. The jail staff delivered the levetiracetam to jail administrator Candy Norman and conveyed to her the information provided by Dr. Richard Clark.

29. During Candy Norman's tenure as jail administrator at the Fentress County Sheriff's Department, including the time period Jason Clark was incarcerated there, she was actively and intimately involved in the day-to-day operations of the jail and involved herself with the provision of medications brought by family members for inmates.

30. The Fentress County Jail has concrete floors.

---

[1] The handwriting on this notation appears to be from two different individuals – "bottom bunk" is written in a different style from "levetiracetam," and Nurse Owens discussed fraudulently altering these records with PA Baird after Jason Clark's fall.

31. The bunks in the Fentress County Jail contain three bed platforms each.

32. The bunks in the Fentress County Jail pose an obvious risk of serious injury to inmates who are prone to seizures.

33. Jail presented a risk of severe harm to inmates at heightened risk of seizures.

34. Defendant Dr. Jonathan Kerley is a licensed physician and the C.E.O. of FAH.

35. FAH contracts with Fentress County for the provision of medical services to inmates housed at the Fentress County Jail.

36. As a result of FAH's contract with Fentress County, FAH is subject to the same constitutional obligations to inmates as the County.

37. Section 2.12 of FAH's contract with Fentress County states that "FAH operates within the COUNTY's policies and procedures."

38. Section 2.5 of FAH's contract with Fentress County, Facility Staff Training, states that:

> "The duty to train the FACILITY staff is and always remains vested in the COUNTY. Upon request of the COUNTY, FAH may assist in training for FACILITY staff on certain topics as determined by the COUNTY. The COUNTY is solely responsible for overall operation of the FACILITY, including medical care. The COUTY maintains ultimate responsibility for training and supervising its correctional officers, including but not limited to emergency procedures, ensuring sick calls are passed along to the medical team, and properly distributing medications (where appropriate)."

39. Section 3.1 of FAH's contract with Fentress County provides:

> "It is ultimately the responsibility of the COUNTY to appropriately fund the FACILITY's healthcare program. As a result, FAH's healthcare program at the FACILITY (staffing, etc.) is customized and approved by the COUNTY."

40. Defendant Jonathan Kerley failed to provide training and proper supervision to his employees, including P.A. Baird and Nurse Owens, regarding the essential knowledge, tools, preparation, and authority to respond to the recurring medical needs of prisoners in the jail setting.

41. Defendant Jonathan Kerley does not maintain any ongoing training program for the licensed practical nurses he employs through FAH to provide jail medical services.

42. Defendant Jonathan Kerley provides no training concerning monitoring or implementation of medical accommodation orders to the licensed practical nurses he employs through FAH.

43. Defendant Jonathan Kerley maintains a custom whereby no supervision or monitoring is conducted to ensure the implementation of medical accommodations including bunk assignments.

44. Beyond the initial inmate medical intake screening, FAH relies almost entirely on licensed practical nurses to provide medical care to inmates at the Fentress County Jail.

45. Defendant Jonathan Kerley fails to provide any training about the constitutional obligations of jail medical providers to the licensed practical nurses his company employs at the Fentress County Jail.

46. FAH employees routinely fail to monitor the implementation of orders for medical accommodations contained in inmate's medical files because Defendant Jonathan Kerley maintains a custom of failing to monitor the implementation of such

accommodations.

47. Defendant Jonathan Kerley failed to implement any standardized protocols to identify inmates at risk from substance withdrawal induced seizures despite the obvious risk of harm posed to these inmates.

48. None of the FAH employees or any other correctional officers ensured that Jason Clark's medically necessitated bunk assignment was implemented.

49. Jason Clark was assigned to the middle bed of a three-bed bunk over a concrete floor.

50. From March 21, 2023 through March 31, 2023, Jason Clark's medication administration record indicates that he was not administered his levetiracetam as prescribed:



51. Early in the morning of April 1, 2023, Jason Clark was sleeping in a middle bed of a three-bed bunk over a concrete floor in the Fentress County Jail.

52. At approximately 6:50 AM, Jason Clark experienced a seizure and fell from his bed onto the concrete floor.

53. At approximately 6:55 AM, Officer Shelters radioed the intake nurse to report Jason Clark was found on the floor and may have had a seizure.

54. Officer Shelters informed Nurse Nerissa Owens that Jason Clark appeared

confused and that his pupils were reactive to light.

55. Jason Clark writhed in delirious agony for several minutes in the booking area while blood pooled in his skull and poured from his ears, nose, and mouth.

56. Nurse Nerissa Owens instructed Officer Shelters to transport Jason Clark to intake for further evaluation.

57. At approximately 7:02 AM, Officer Dalton radioed Nurse Nerissa Owens and reported that Jason Clark was confused and combative.

58. Nurse Nerissa Owens instructed Officer Dalton to do medical monitoring on Jason Clark.

59. Officer Dalton then informed Nurse Nerissa Owens that Jason Clark had hit his head hard and was bleeding from his ears, nose, and mouth.

60. Nurse Nerissa Owens then advised Correctional Officer Dalton to call EMS.

61. At approximately 7:07 AM, EMS arrived at the Fentress County Jail.

62. At approximately 7:41 AM, Jason Clark was transported from the Fentress County Jail.

63. At approximately 10:00 AM on April 1, 2023 Jason Clark arrived at the University of Tennessee Medical Center in Knoxville, Tennessee.

64. Jason Clark was officially furloughed and released from the Fentress County Jail on April 2, 2023.

65. As a result of the fall, Jason Cark suffered from an epidural hematoma, brain compression, a left parietotemporal skull fracture, and acute hypoxic respiratory

failure.

66. He was transported directly to the University of Tennessee Medical Center where he was ventilated and intubated.

67. His condition was stabilized for a time, but as of the date of filing this Complaint, Jason Clark is in critical condition at St. Thomas Hospital as a result of complications from his injuries sustained at the Fentress County Jail.

68. Jason Clark has exhibited response to external stimuli, including responding to his mother by puckering his lips so she may apply chap-stick to them, and by blinking an eye in response to verbal prompting.

69. Jason Clark is completely reliant upon others for all daily needs including food and hydration.

70. Dr. Richard Gary was appointed as the conservator for Jason Michael Clark by the Fentress County Chancery Court on June 26th, 2023.

71. Prior to Jason Clark's fall, Fentress County received continuous complaints regarding injuries caused by failures to administer prescription medication and staff's failure to implement medical accommodations.

72. At the time of Mr. Clark's fall, there had been a long-standing custom or practice of cutting corners with inmate medical care such that their physical well-being is endangered; cover-up of misconduct; and failure to discipline and train medical staff, as evidenced by all of the above and:

   a) FAH medical staff routinely failed to adequately communicate medical needs to correctional officers charged with implementing medically

        necessitated accommodations including bunk assignments for inmates at known risk for seizures;

    b) FAH medical staff were not present at the Fentress County Jail on weekends to attend to the serious medical needs of inmates including Jason Clark;

    c) Inmates routinely failed to receive prescription medication due to understaffing of FAH medical personnel at the Fentress County Jail;

    d) Nonmedically trained correctional officers including Candy Norman were delegated with decisionmaking authority concerning the administration of medication and implementation of medically ordered accommodations.

73. Defendant Jonathan Kerley was well aware of these problems due to the significantly high number of inmates who complained of and suffered injuries at the Fentress County Jail based on a failure to receive adequate medical care.

74. Defendant Jonathan Kerley is the supervising doctor directly responsible for ensuring that PA Baird and Nurse Owens:

    a) Render constitutionally adequate medical treatment to inmates at the Fentress County Jail;

    b) Provide reasonable accommodations to inmates with disabilities including seizure disorders

75. As a result of the Defendant's acts and omissions, Jason Clark has suffered serve physical and emotional injuries. The damage to his brain has caused a significant

loss of cognitive functioning which severely diminishes his quality of life.

### COUNT I: VIOLATION OF THE RIGHT TO DUE PROCESS
### FOURTEENTH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE
### 42 U.S.C § 1983

76. All the actions and omissions committed by Defendant Jonathan Kerley are taken under color of state law because he was each acting under the authority given to him by the government and the acts and omissions were committed within the exercise of his official authority, responsibility, or duties.

77. The constitutional rights afforded to prisoners who have been convicted of any criminal offense under the Eighth Amendment's Cruel and Unusual Punishment Clause extend to state pretrial detainees under the Due Process Clause of the Fourteenth Amendment.

78. The Fourteenth Amendment to the United States Constitution requires that pretrial detainees be provided adequate medical care while in the custody of any government entity.

79. Jason Clark's seizure disorder presented an objectively serious medical need that required both medication and a non-elevated sleeping accommodation.

80. Within the meaning 42 U.S.C. § 1983, Jonathan Kerley, as CEO of FAH, acted under color of state law in providing medical care to pre-trial detainees at the Fentress County jail.

81. Defendant Jonathan Kerley exhibited deliberate indifference to Jason Clark's serious medical needs by:

    a) Maintaining policies, practices, and customs whereby medically

ordered accommodations are ignored by staff;

b) Maintaining policies, practices, and customs that allow and cause medical personnel to disregard the serious medical needs of inmates by failing to take reasonable measures to ensure that correctional staff receive critical medical information;

c) Failing to train licensed practical nurses and correctional officers regarding the monitoring and implementation of medically ordered accommodations;

d) Failing to establish policies and procedures whereby critical medical accommodations for detainees are communicated to and implemented by the Sheriff's correctional staff;

e) Failing to establish adequate training, procedures, and supervision to ensure that critical medical accommodations are not just written into an inmate's medical chart but also effectively communicated to and implemented by correctional officers;

f) Maintain customs of acquiescence to the disregard of serious medical needs represented by medically necessitated environmental accommodations including bunk assignments;

g) Maintaining customs of acquiescence to interference by correctional officers including Candy Norman in the provision of critical medical care to inmates at the Fentress County Jail.

82. Jonathan Kerley is a policymaker that is aware of, condoned, and facilitate

by his inaction, the conscious disregard for inmates medically' necessitated environmental accommodations including bunk assignments within the Fentress County Jail.

83. Defendant Jonathan Kerley is liable for deliberate indifference based on his above-described failure to train FAH medical staff .

84. Defendant Jonathan Kerley is liable for deliberate indifference based on his above-described failure to supervise FAH medical staff.

85. Defendant Jonathan Kerley is liable on a theory of failure to train

86. As a result of the Defendant's reckless disregard of Jason Clark's serious medical need, Jason Clark suffered injuries including pain and suffering, permanent physical and mental injuries, emotional distress, loss of enjoyment of life, reduced life expectancy, and pecuniary damages including extensive past and future medical bills.

### COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12132 *et seq*

87. Jason Clark is a disabled person whose major life activity is substantially limited as a result of his seizure disorder. When suffering a seizure, Mr. Clark cannot speak, walk, sit up, control his bodily movements or care for himself. As a result of his disability, Mr. Clark cannot sleep on an elevated bunk even when given anti-seizure medication.

88. Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

89. Under Title II of the Americans with Disabilities Act, public entities are required to make reasonable modifications to avoid discrimination on the basis of disability. The ADA establishes an affirmative requirement to act appropriately with respect to prisoners with disabilities.

90. The ADA creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

91. Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

92. Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on his mental or physical health. These accommodations include specialized training of jail staff, the provision of a heightened level of medical care, and diligent surveillance.

93. In order to safely enjoy the benefit of a bed provided to all inmates, Jason Clark required an accommodation – a bottom bunk due to his chronic seizure disorder.

94. Defendant Kerley knew or should have known that no mechanism, policy, or practice existed within the Fentress County Jail to ensure medically ordered bunk accommodations were actually implemented.

95. Defendant Kerley knew or should have known that FAH maintained a custom whereby inmates with conditions necessitating prescription medication, including inmates with seizure disorder, benzodiazepine withdrawal, and other disorders qualifying as disabilities within the meaning of the ADA, were regularly denied access to the medications required to treat their disorders.

96. Defendant Kerley failed to make reasonable accommodations to Jason Clark's medical needs based on his seizure disorder. Defendant Kerley denied Jason Clark the benefits of the services, programs, or activities they provide.

97. Despite "bottom bunk" being written in Jason Clark's medical file (which, based on the handwriting and the discussions of falsifying the records after the fact between Nurse Owens and PA Baird, could have been written after Jason Clark's fall), no FAH employee took any action to ensure this information was conveyed to or implemented by the correctional officers who actually set bunk assignments.

98. Despite Nurse Owens' and P.A. Baird's personal awareness of Jason Clark's seizure disorder and concomitant need for the accommodation of a bottom bunk, they took no action to check for available bottom bunk or to provide an alternative sleeping arrangement such as a pallet on the floor.

99. But for Defendant Kerley's intentional discrimination against Jason Clark on the basis of disability, he would not have fallen from an elevated bunk and suffered severe injuries on April 1, 2023.

### DAMAGES

100. As a direct and proximate result of the Defendants' violations of his federally protected rights and their reckless disregard to a serious medical need, Plaintiff has suffered:

   a) Pain and suffering

   b) Physical and mental injuries

   c) Pecuniary damages including past and future medical expenses

d) Loss of enjoyment of life

   e) Reduced life expectancy

   f) Serious mental suffering and emotional distress

101. Based on their intentional and reckless misconduct, Jason Clark requests an award of punitive damages against Defendants Reagon, Norman, Baird, and Owens.0

### REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff Jason Clark requests:

I. Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II. A jury be empaneled to try this case;

III. That a Declaratory Judgment be entered;

IV. That Plaintiff Clark be awarded nominal damages;

V. That Plaintiff Clark be awarded compensatory damages in the amount of twenty million dollars ($20,000,000.00);

VI. That Plaintiff Clark be awarded punitive damages against Defendant Jonathan Kerley in an amount deemed appropriate by a jury;

VII. That Plaintiff Clark be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VIII. For pre- and post-judgment interest on all damages awarded;

IX. For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Sarah Mansfield*
Wesley Ben Clark, #32611
Frank Ross Brazil, #34586
Paul D Randolph #39667
Sarah Mansfield #39476
BRAZIL CLARK, PLLC
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
frank@brazilclark.com
paul@brazilclark.com
sarah@brazilclark.com